*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

J.A. BLOCH AND COMPANY and SUN ACQ, LLC,

Plaintiffs-Appellants,

v

ANN ARBOR TOWNSHIP,

Defendant-Appellee,

and

VILLAGE OF BARTON HILLS and BARTON HILLS MAINTENANCE CORPORATION,

Intervenors.

UNPUBLISHED
December 22, 2022

No. 359265
Washtenaw Circuit Court
LC No. 21-000173-CZ

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

The present case arises from a dispute over a proposed manufactured-home development in Ann Arbor Township and, more specifically, the continued validity of a 1975 court order authorizing a development on the site in question. Plaintiffs appeal as of right an order denying plaintiffs' motion for summary disposition and instead entering judgment in favor of defendant, Ann Arbor Township, under MCR 2.116(I)(2). For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further.

## I. BASIC FACTS AND PROCEDURAL HISTORY

As previously stated, this dispute relates to a proposed mobile-home or manufactured-home development in Ann Arbor Township. The property at issue consists of three parcels, totaling approximately 139 acres. In the 1970s, plaintiffs' predecessors—Herman Doletsky, Mary Doletsky, Mort Levin, Harry Nayer, Robert Warren, and Penz Development Company (collectively, the Doletsky plaintiffs)—filed suit against the township, seeking an injunction

-1-

directing the township to allow use of the property as a mobile-home park under the R-5 classification, which governed mobile-home-park districts in the township at that time. At the time, the township had *no* areas in the township zoned as R-5. Following a bench trial, the trial court entered an opinion, a supplemental opinion, and ultimately a judgment in favor of the Doletsky plaintiffs. Specifically, the final judgment of the trial court entered on April 25, 1975. In relevant part, the final judgment stated:

> IT IS ORDERED and adjudged that the present zoning of the [Doletsky] plaintiffs' 139 acres of real estate in Ann Arbor Township [as described with a metes and bounds description and references to deeds recorded with the Register of Deeds for Washtenaw County]
>
> * * *
>
> is invalid because it bears no substantial relationship to the public health, safety and welfare; and that [the Doletsky] Plaintiffs are entitled to a permit for the development of such property as a mobile home park in accordance with the terms and conditions of the R-5 zoning classification contained in Ann Arbor Township's Zoning Ordinance and in compliance with public health regulations.
>
> IT SHALL BE AND HEREBY IS ORDERED that the above described property shall for all purposes be deemed to be zoned in the said R-5 zoning classification.
>
> It is adjudged that Plaintiffs or any of them or their successors, if any, are entitled to develop the above described real property as a mobile home park in accordance with the terms and conditions of the R-5 zoning classification contained in Ann Arbor Township's Zoning Ordinance and in compliance with public health and regulations.
>
> It is further ordered that [the township] shall issue such permits as may be necessary under its ordinances for development of the above-described real property as a mobile home park in accordance with the terms of this judgment.

The township appealed to this Court, and a panel of this Court affirmed the trial court's judgment, reasoning, in part:

> The township has provided a mobile home zoning district, but has failed to so zone any property in the township. [The township's] argument that there has been no previous request for rezoning to R-5 is inapposite. Mobile home parks have been totally excluded from the township. The ordinance is invalid as applied to the [Doletsky] plaintiff's use of their land. [*Doletsky v Ann Arbor Twp*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 1976 (Docket No. 24056), p 3.]

The township then sought delayed leave to appeal in the Michigan Supreme Court, which the Supreme Court denied. *Doletsky v Ann Arbor Twp*, 399 Mich 834 (1977).

Following the original lawsuit, the property was transferred in its entirety to J.A. Bloch, which was formerly known as Penz Development. In the late 1980s, J.A. Bloch made some efforts toward development of a mobile-home park, including submitting a site plan to the township and requesting the rezoning of one parcel, totaling 80 acres, to R-6, which was and is the current township zoning ordinance for mobile-home parks. Although the 80-acre parcel was rezoned to R-6, the other two parcels remained zoned as A-1 for general agriculture. The development was ultimately not completed in the 1980s.

In 2008, and again in 2015, the township adopted new Master Plans, which referred to the previous litigation from the 1970s. Both Master Plans stated:

> In Area C, in 1977, Ann Arbor Township accepted a court ordered mobile home park zoning on the north side of Warren Road, east of US-23. The Township will permit the mobile home park to develop as directed by the court's decision. Other areas of the Master Plan have been structured with this planning decision in place.

Nevertheless, in 2020, Sun ACQ, LLC, submitted a preliminary site plan to the township, seeking approvals for a 499-unit, mobile-home park, which would be served by an on-site "community well and private wastewater treatment plan." The township rejected the preliminary site plan for a development—known as Arbor Oaks Manufactured Home Park—on the property in question. In rejecting the site plan, and indeed refusing to consider the site plan, the township noted that one parcel was zoned R-6, but the other two parcels were zoned A-1, and the township asserted that plaintiffs needed to seek rezoning before a site plan would be considered. Notably, for the first time, the township also disavowed the continued validity of the 1975 Judgment, stating that it was now the township's position that "the 1975 Judgment is not valid and is unenforceable." In 2020, the township also amended its zoning ordinances with regard to mobile-home parks and the site-plan approvals required for mobile-home parks.

In February 2021, plaintiffs filed suit against the township, seeking declaratory and injunctive relief. Specifically, their complaint alleged three counts: (1) a request for declaratory relief to the effect that the 1975 Judgment remained valid and that the township should be estopped from claiming the judgment was not enforceable; (2) a due-process claim involving the assertion that the 2020 revisions to the township's ordinance violated the procedures for approval of mobile-home parks as set forth in The Mobile Home Commission Act (MHCA), MCL 125.2301 *et seq.*, and constituted part of a "long-term pattern and practice" by the township in discriminating against mobile-home parks; and (3) a claim that the township's refusal to comply with the 1975 Judgment amounted to contempt of court.

Over plaintiffs' objections, the trial court allowed intervenors—the Village of Barton Hills and the Barton Hills Maintenance Corporation—to intervene in the case. Intervenors maintained that they had a right to intervene because they owned and operated a nearby municipal water supply system, which drew water from an aquifer under plaintiffs' property, and the township would not adequately protect their interests. Alternatively, intervenors asserted that their interest in their water supply provided a basis for permissive intervention, which they asserted would not unduly delay proceedings or prejudice the rights of the original parties. In allowing intervention, the trial

court concluded that intervenors had an interest that may not be adequately protected by the township.

Plaintiffs moved the trial court for partial summary disposition under MCR 2.116(C)(9) and (C)(10). In particular, plaintiffs contended that they were entitled to summary disposition to the effect (1) that the 1975 Judgment remained in full force and effect and (2) that the 2020 amendments to the township's zoning ordinance were unenforceable because the amendment violated the MHCA. In asserting that the 1975 Judgment remained valid, plaintiffs more specifically argued (1) that the judgment did not expire, (2) that the township waived any claim regarding the validity of the judgment, (3) that laches did not bar plaintiffs from seeking to enforce the judgment because there was no inexcusable delay and no prejudice to the township, (4) that the judgment was not an impermissible exercise of legislative authority by the judiciary, and (5) that collateral estoppel and res judicata precluded the township from attacking the validity of the 1975 Judgment.

In response, the township asserted that plaintiffs' motion for summary disposition should be denied and that the trial court should instead enter judgment in favor of the township under MCR 2.116(I)(2). Most relevant to the issues on appeal, the township asserted that laches applied to bar enforcement of the 1975 Judgment or that a statute of limitations barred plaintiffs' attempt to enforce the judgment. Relating to plaintiffs' challenges to the 2020 zoning amendments, the township also asserted that plaintiffs' claim in Count II related to the MHCA should be dismissed because plaintiffs lacked standing and they were effectively seeking an advisory opinion to which they were not entitled. Intervenors filed a brief supporting the township's position regarding summary disposition.

The trial court denied plaintiffs' motion for summary disposition, and instead granted summary disposition to the township under MCR 2.116(I)(2). Regarding the 1975 Judgment, the trial court concluded that laches barred plaintiffs' attempts to enforce the judgment at this time. The trial court reasoned:

> The Township's laches argument and I'll say further and I don't agree that every declaratory judgment would be subject to laches. If this were a quiet title action where you had an adverse possession issue and we were talking about a judgment in favor of someone on adverse possession of a piece of property, then I would agree that that runs forever or until it's modified in some other way.
>
> This is a particular request to—or the earlier case, the 1970 something case, sought to build a mobile home park on property that wasn't zoned for that. The argument was that—or one of the arguments was that the Township had effectively zoned out mobile home parks and the judge ruled that that was unconstitutional and gave permission to the extent that he could or beyond the extent that he could evidently, to build a mobile home park on these three parcels of property and directed that the property would be zoned or would be considered as zoned R-5 or otherwise as would permit a mobile home park.
>
> And following that in 1975 the developer did not build the mobile home park. The Township 10 years later in 1985 rezoned one third of the property or one

-4-

of the three parcels to permit a mobile home park and still nothing else happened until the past couple of years when the Plaintiff and or Plaintiffs' would-be successor in interest sought to build a mobile home park on all three parcels and the Township said no.

There is zoning in the Township that permits mobile home parks.[1] The basis for the earlier decision of the judge—of the earlier judge, 1975, no longer exists and that name I don't even recognize, Vander something, I don't know.

But in any event as I said I think that permission such as this doesn't, last forever. I couldn't say when it expired. I would say it would have been suspect within a couple of years after 1985 when the one parcel was rezoned and the two others were not.

And after that the property owner is at his peril to either seek permission to build it or follow through with the township to ensure that the entire—or that the other two parcels are rezoned to permit a mobile home park. But failing one of those two actions, my ruling is that he's barred—that the property owner is barred by laches from now acting in that 1975 judgment.

In comparison, with regard to plaintiffs' Count II, the trial court also agreed with the township that plaintiffs were essentially requesting an "advisory opinion" and that the claim was not yet ripe for judicial review. Plaintiffs now appeal to this Court as of right.

## II. SUMMARY DISPOSITION RELATED TO THE 1975 JUDGMENT

On appeal, plaintiffs first argue that the trial court erred by granting summary disposition to the township on the basis that laches barred enforcement of the 1975 Judgment. According to plaintiffs, summary disposition should have instead been granted to plaintiffs on the basis of res judicata, collateral estoppel, or waiver. In response, the township asserts that the trial court correctly applied laches to the facts of this case. As an alternate basis to affirm, the township also argues that a statute of limitations bars plaintiffs' enforcement of the 1975 order, and in the context of its statute-of-limitations argument, the township argues that summary disposition was properly granted because the 1975 Judgment was an injunction, which is always modifiable.

## A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014). "A circuit court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines

---

[1] The zoning that permitted mobile-homes in the township at the time of the trial court's ruling was the R-6 zoning on one of plaintiffs' parcels. Since the trial court's ruling, the township has rezoned this parcel to R-2 for single-family suburban residential development.

that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Connell v Lima Twp*, 336 Mich App 263, 281; 970 NW2d 354 (2021).

Absent a factual dispute, whether a claim is barred by a statutory limitations period presents a question of law, which this Court reviews de novo. *In re Gerald L Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015). Likewise, with respect to laches, "this Court reviews a trial court's equitable decisions de novo, but the findings of fact supporting an equitable decision are reviewed for clear error." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). In the context of summary disposition, laches can be decided as a matter of law if the facts are undisputed. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 394-395; 761 NW2d 353 (2008).

B. LACHES

Following review of the record evidence in this matter, we conclude that laches does not apply on the undisputed facts of this case, thus, the trial court erred by granting summary disposition to the township on the basis of laches. This Court has explained:

> Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff. The doctrine of laches arose from the requirement that a complainant in equity must come to the court with a clean conscience, in good faith, and after acting with reasonable diligence. If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches. Although timing is important, laches is not triggered by the passage of time alone; rather, it is the prejudice occasioned by the delay that justifies application of the doctrine to bar a claim. The defendant bears the burden of proving that the plaintiff's lack of diligence prejudiced the defendant sufficiently to warrant application of the doctrine of laches. [*Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 410; 964 NW2d 846 (2020) (quotation marks and citations omitted).]

Hence, this Court has stated there are two basic requirements to the application of the doctrine of laches. There must be both a lack of diligence by the plaintiff and resulting prejudice to the defendant. See *id.*; *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013).

Here, with regard to plaintiffs' diligence, the trial court concluded that plaintiffs delayed in bringing the action, reasoning that the 1975 Judgment should have been considered "suspect" in the 1980s after the township's rezoning of one parcel, representing approximately 80 acres, without rezoning all three parcels, totaling 139 acres. However, the trial court's conclusion that this rezoning in the 1980s should have prompted a lawsuit or other action by plaintiffs is not supported by the record. First, the record is devoid of any evidence as to *why*, or under what circumstances, the township rezoned only one parcel in the 1980s. No evidence exists in the record to demonstrate or even infer that plaintiffs sought to use the entire 139 acres in the 1980s and that their request was rejected or that the township otherwise informed plaintiffs' predecessor that it

would not honor the 1975 Judgment in its entirety.[2]  Absent more information about the rezoning events in the 1980s, there is no reason to suppose that plaintiffs' rights under the judgment were abridged by the township in 1987, and there is no basis to conclude that plaintiffs slept on their rights. See *Sylvan Twp v City Of Chelsea*, 313 Mich App 305, 327-328; 882 NW2d 545 (2015) (concluding that laches did not apply when it could not be determined from the available record when it was practicable for the plaintiff to assert the right at issue).

Moreover, the trial court's suggestion that suit should have been instituted within a couple years of the 1987 zoning decision is resoundingly undermined by the 2008 and 2015 Master Plans. The township's Master Plans for both 2008 and 2015, acknowledged the prior judgment and expressly stated that the township would abide by that judgment.  The 2008 Master Plan stated:

> In Area C, in 1977, Ann Arbor Township accepted a court ordered mobile home park zoning on the north side of Warren Road, east of US-23. *The Township will permit the mobile home park to develop as directed by the court's decision.* Other areas of the Master Plan have been structured with this planning decision in place.

The township's most recent Master Plan, from 2015, contains identical language regarding the mobile-home lawsuit from the 1970s.  The township's express recognition of the judgment—and the unequivocal statement of its intent to "permit the mobile home park to develop as directed by the court's decision"—clearly supports that plaintiffs had no reason to doubt the township's continued willingness to comply with the 1975 Judgment.[3]  From this record there was no basis

---

[2] Although not evidence, statements by the township's attorney at the summary disposition hearing on November 18, 2021, support the opposite—that the township fully honored the 1975 Judgment in the 1980s by granting J.A. Bloch's request in its entirety, which at that time only implicated 80 acres of the property.  Specifically, the township's attorney explained his understanding of the 1987 zoning decision as follows: "It was in 1987 is my understanding which is when Mr. Bloch had asked at that time to put 500 mobile homes east of US-23 *on the 80 acres*.  He started that process, the Township started working with him.  He abandoned the project."  The site plan review report related to the plans in the 1980s supports counsel's assertion that J.A. Bloch only planned to put mobile home on 80 acres (the parcel on the north side of Warren Road, east of US-23), and the report acknowledged that the site was zoned for mobile-home park use as a "result of a court order."  Further, the meeting minutes for the zoning approval from November 1987 simply speak of approving a zoning request; there is no indication that a request to rezone the remaining two parcels was denied.  If, as counsel's comments and the evidence suggest, the plan in 1987 was only to use 80 acres for mobile homes and the township fully honored this request consistent with the requirements of the 1975 Judgment, plaintiffs had no cause to complain and no reason to file suit at that time.

[3] The township argues on appeal that it only intended to honor the mobile-home zoning north of Warren Road, east of US-23, meaning that it was not agreeing to honor the entire judgment, which allowed for development of 139 acres.  However, that is not what the Master Plans stated.  The

-7-

for the trial court to conclude that plaintiffs' sat on their rights as the township's continued recognition of plaintiffs' rights under the 1975 Judgment provided sound reason for any delay by plaintiffs in bringing suit.  See *Angeloff v Smith*, 254 Mich 99, 101; 235 NW 823 (1931) ("[The defendant's] recognition of [the plaintiff's] title obviated the necessity of her asserting it against him by action."); *Backus v Backus*, 207 Mich 690, 695; 175 NW 400 (1919) (concluding that laches did not apply because, among other reasons, the defendant had "faithfully promised [the plaintiff] to transfer the Dime Bank stock to him from time to time").[4]

Indeed, it was not until the township refused to consider plaintiffs' site plan in November 2020 and for the first time disavowed the validity of the 1975 Judgment that would have triggered a suit by plaintiffs.  See generally *Dorko v Dorko*, 504 Mich 68, 77; 934 NW2d 644 (2019) ("When a party breaches a substantive obligation arising out of a legal judgment, that breach gives rise to an independent cause of action.  The harmed party then acquires the right to bring an action to enforce the judgment.").  Hence, defendants made plaintiffs aware of their intent not to honor the 1975 judgment in November of 2020 and approximately three months later, plaintiffs filed this lawsuit.  Three months to file suit does not constitute an unreasonable delay.  See *Penrose v McCullough*, 308 Mich App 145, 154; 862 NW2d 674 (2014).  Accordingly, the trial court clearly erred by finding unreasonable delay by plaintiffs in bringing suit.

Additionally, even if plaintiffs unreasonably delayed, the township must also make a showing of prejudice.  See *Sylvan Twp*, 313 Mich App at 327 ("[T]he primary inquiry when applying the doctrine of laches is whether the plaintiff's failure to earlier assert his or her claim prejudiced the defendant.").  Here, considering the trial court's laches ruling, it is not clear to us that the trial court addressed prejudice, and by applying laches without a showing of prejudice, the trial court clearly erred.  See *Bayberry Group, Inc*, 334 Mich App at 411-412.  We also note that, typically, laches requires fact-finding.  See *id*.  In this case, however, the township sought to apply laches at the summary disposition stage, asserting that the facts relevant to laches were undisputed.  In these circumstances, on the undisputed facts, this Court can address laches as a matter of law.  See *Johnson Family Ltd Partnership, LLC*, 281 Mich App at 395.  Specifically, on appeal, in arguing for affirmance of the trial court's laches decision, the township offers two bases on appeal on which prejudice should be found in this case: loss of evidence from the 1970s and changed circumstances.  These arguments lack merit.

First, regarding the loss of evidence, prejudice to support a laches defense can arise from a loss of evidence, such as when important witnesses have died or material evidence has otherwise become unavailable.  See *Knight*, 300 Mich App at 119-120.  See, e.g., *Henderson v Connolly's Estate*, 294 Mich 1, 18; 292 NW 543 (1940).  Here, plaintiffs' claim is quite narrow and rests on rights set forth in a court order.  "[A] court speaks through its written orders and judgment." *In re*

---

Master Plans unequivocally stated that the township would permit development "as directed by the court's decision," which unambiguously applied to all 139 acres.

[4] See also 30A CJS, Equity, § 168 ("The continued recognition or acknowledgment by the defendant of plaintiff's right is generally sufficient to account for delay in instituting suit to enforce it; thus, where the opposing party has continued to recognize the adverse right sought to be enforced, the period of prescription begins to run from the last recognition.").

*Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). And the interpretation of a trial court's order is a question of law, *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008), which involves enforcing unambiguous judgments as written. See *AFT v State*, 334 Mich App 215, 236; 964 NW2d 113 (2020) (holding that judgments should be interpreted using basic contract-interpretation principles). The 1975 Judgment—which represents the trial court's ruling and which represents the entire basis for plaintiffs' rights—still exists, and there is no ambiguity, nor has the township attempted to identify an ambiguity, that would require extrinsic evidence to resolve.

In their attempt to demonstrate prejudice from lost evidence, the township claims that the 1975 Judgment on its own is not enough because evidence relating to the original site plan no longer exists.[5] However, the 1975 Judgment did not incorporate the original site plan or otherwise order the implementation of a specific development plan. Instead, the 1975 Judgment unequivocally stated, in relevant part, that the zoning for the property—all 139 acres—was "invalid" and that plaintiffs, "or their successors," were "entitled to develop" the property "as a mobile home park in accordance with the terms and conditions of the . . . [mobile-home] zoning classification contained in Ann Arbor Township's Zoning Ordinance and in compliance with public health and regulations." Given that the 1975 Judgment did not order implementation of a specific mobile-home-park plan, and given that the township has not otherwise identified any lost evidence material to the issues in this case, the township's lost-evidence argument lacks merit, and does not support the township's assertion of prejudice. See *In re Runco*, 463 Mich 517, 523; 620 NW2d 844 (2001) (rejecting laches defense when "the materials that had become unavailable over time did not include any that were necessary for resolution of the central issues").

The township's change-of-circumstance argument is equally unsupported. In this regard, laches will apply when there is an unexcused delay in commencing the action and "a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (quotation marks and citation omitted). In contrast, when "the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized." *Id*. In this case, the township claims that there has been a change in circumstances because the township is now committed to "farmland preservation." This argument lacks merit for two reasons.

First, the record does not support the township's assertion of a *newfound* commitment to farmland preservation.[6] The township's Master Plan from 1971—as detailed in the township's

---

[5] Although trial court materials resulting in the 1975 Judgment have reportedly been lost, we note that the parties presented the trial court in this case with the Michigan Supreme Court's lengthy record from the 1970s, which provides ample context for the trial court's ruling. And the 1975 Judgment is of course in addition to two written opinions by the trial court, both of which still exist.

[6] This claim that a newfound commitment to farmland preservation supports disavowing the 1975 Judgment is also questionable sincerity given that, within months of the grant of summary

brief on appeal to the Michigan Supreme Court in the previous lawsuit—included in its goals and objectives recognizing

> that *good agricultural land is a vital natural resource and should be protected insofar as possible*, recommending that the use of the most productive soils in the Township for other than agricultural purposes should be discouraged except when planned and orderly neighborhood concentrations are needed to meet the pressures of urban growth. [Emphasis added.]

In short, farmland preservation does not appear to be a novel goal for the township, and it does not constitute a change in circumstances supporting the invocation of laches to prevent the enforcement of the 1975 Judgment.

Second, the 2008 and 2015 Master Plans wholly undermine the township's claims of prejudice stemming from a change in circumstances. Again, both plans expressly state: "The Township will permit the mobile home park to develop as directed by the court's decision. *Other areas of the Master Plan have been structured with this planning decision in place*." (Emphasis added.) Hence, the 1975 Judgment is not some long-forgotten judgment that had been overlooked by the township. Instead, as most recently stated in 2015, the township planned and structured its zoning decisions on the basis that a mobile-home park would be developed as directed in the 1975 Judgment.[7] Clearly, this is not a case in which the township made decisions or incurred expenses to its detriment on the basis that plaintiffs would *not* be enforcing their rights under the 1975 Judgment. See *Lyon Charter Twp v Petty*, 317 Mich App 482, 491; 896 NW2d 477 (2016) (compiling examples in which in the party asserting laches demonstrated a substantial change in position or extensive obligations incurred as a result of the other party's inaction). The township did not want a mobile-home park in 1975, and it may not want a mobile-home park now, but it has been expressly planning for one on plaintiffs' property for 45 years. The parties' situation has not

---

disposition to the township in this case, the township undertook to rezone two of plaintiffs' parcels—including a parcel zoned A-1 for agriculture—to R-2, for single-family suburban residential. These rezoning efforts after the grant of summary disposition are part of the record before us because we granted plaintiffs' motion to expand the record. *J.A. Bloch and Co v Ann Arbor Township*, unpublished order of the Court of Appeals, entered October 10, 2022 (Docket No. 359265). Nevertheless, these materials are not necessary to our conclusion that the trial court erred by granting summary disposition to the township, and we instead limit our review to the evidence presented to the trial court at the time the motion was decided. See *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310, 313 n 4; 660 NW2d 351 (2003); see also MCR 2.116(G)(5).

[7] Indeed, as supported by evidence submitted by plaintiffs in the trial court, the township has in fact denied other rezoning requests for mobile-home parks, including within the reasons for the denial the fact that another area of the township, i.e., plaintiffs' property, was zoned for a mobile-home park as a result of the prior judgment. In its summary disposition response brief in the trial court, and on appeal, the township claimed that it would have made different planning decisions if it had *not* been honoring the 1975 Judgment.

materially changed, and any delay by plaintiffs has not put the township is a worse condition.[8] See *Wayne Co*, 267 Mich App at 252. Accordingly, the township has not been harmed by plaintiffs' failure to file suit earlier, and there is no prejudice to the township in the enforcement of the 1975 Judgment. Absent prejudice to the township, laches does not apply. In sum, laches does not apply on the undisputed facts of this case, and the trial court erred by granting summary disposition to the township on the basis of laches.[9]

## C. STATUTES OF LIMITATIONS

As an alternate basis to affirm the trial court's grant of summary disposition to the township, the township asserts that plaintiffs request to enforce the judgment is barred by a statute of limitations. "[T]he running of the statute of limitations is an affirmative defense." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993). The burden is on the defendant to raise the statute of limitations, see *id*., and to ultimately "prove facts that bring the case within the statute," *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). In this case, the township has not shown that plaintiffs' claim is barred by a statute of limitations.

### 1. STATUTORY PROVISIONS

As an initial matter, the township appears somewhat uncertain about what specific statute of limitations, if any, should apply. The township begins with a broad argument that the "policies" underlying statutes of limitations should bar plaintiffs' claims. The township then mentions MCL 600.5809, but recognizes that there is caselaw stating that this provision only applies to the enforcement of a money judgment. If MCL 600.5809 does not apply, the township suggests that MCL 600.5801(4) should bar plaintiffs' claim. Neither statute identified by the township bars plaintiffs' claims in this case.

First, MCL 600.5809 expressly applies to "an action to enforce a noncontractual money obligation," which can include a money judgment. See MCL 600.5809(1), (3). A party seeking to enforce a money judgment or decree is subject to a 10-year period of limitations under MCL 600.5809(3). However, when, as in this case, there is "no money judgment" at issue, MCL 600.5809(3) is inapplicable. *Ins Comm'r v Aageson Thibo Agency*, 226 Mich App 336, 346;

---

[8] If anything, the passage of time has likely benefited the township insofar as there has been an increase in environmental regulations and other health and safety matters over the last 45 years that will govern plaintiffs' development today. Cf. *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 571, 578; 485 NW2d 129 (1992) ("If anything, defendants may have benefited from the increased level of environmental regulation that has developed since the easement agreement was recorded in 1967.").

[9] With regard to laches, we note that plaintiffs appear to argue that laches could *never* bar enforcement of a nonmoney judgment related to land use. Plaintiffs' cursory treatment of this issue constitutes abandonment. See *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009) ("Failure to brief a question on appeal is tantamount to abandoning it."). Moreover, it is unnecessary to address this issue because it is readily apparent that laches does not apply to the facts of this case.

573 NW2d 637 (1997). See also *Stabile v Gen Enterprises*, 70 Mich App 711, 716; 246 NW2d 375 (1976) (concluding that 10-year statute of limitations in MCL 600.5809 applied only to the enforcement of *money* judgments and decrees). For these reasons, MCL 600.5809 does not apply.

Second, MCL 600.5801 governs actions "for the recovery or possession of any lands or to make any entry upon any lands." In arguing that MCL 600.5801 bars plaintiffs' claim relating to the 1975 Judgment, the township relies on *Stabile*, 70 Mich App at 711. In that case, the plaintiffs filed suit in 1957, seeking to enjoin the defendants from obstructing and diverting the normal flow of the Clinton River. *Id*. at 713. The lawsuit resulted in a consent decree, entered in 1959. *Id*. Among other provisions, the consent judgment provided that, within six months, the defendants had to erect a barrier to redirect $^2/_3$ of the water back to the original bed of the Clinton River, and the parties—for themselves, their heirs, assigns, etc.—agreed to maintain the resulting division of water. *Id*. at 714. If the defendants failed to fulfill this requirement, the consent judgment provided that the plaintiffs could petition the court for an injunction. *Id*. at 715. The consent judgment also specified that it could be registered with the Office of the Register of Deeds in Macomb County. *Id*.

The defendants did not restore the water flow, and when the plaintiffs sought enforcement of the order, the trial court concluded that the plaintiffs' claim was barred by the 10-year period of limitations in MCL 600.5809. *Id*. at 715-716. On appeal, this Court found MCL 600.5809 inapplicable, concluding, that it only applied to "the enforcement of money judgments and decrees." *Id*. at 716. Instead, this Court concluded that the 15-year period of limitations in MCL 600.5801(4) applied. *Id*. This Court explained:

> We find the 15-year statute of limitations embodied in MCL 600.5801(4); applicable in the instant case. The decree of September 10, 1959, *settled rights in land*. The parties by their express words intended it to operate as a grant of rights. Paragraph 6 of the judgment specifically provides that the decree instrument is recordable in the Macomb County Register of Deeds office. The property rights created by the decree, filed with the Register of Deeds, are what is sought to be enforced, not the underlying decree.

> Were we to hold that the 10-year statute of limitations of MCL 600.5809, applied, we would face the anomaly of the defendants *gaining prescriptive rights in* 10 years. We find no legislative intention that this occur. [*Id*. at 716-717 (emphasis added).]

In this case, the township's reliance on MCL 600.5801 and *Stabile* is misplaced. Unlike the present case, *Stabile* involved an underlying property right—specifically flowage rights—that can be lost through prescription. See *Terlecki v Stewart*, 278 Mich App 644, 662; 754 NW2d 899 (2008) (applying MCL 600.5801(4) in the context for flowage easement dispute and explaining prescriptive easements and adverse possession in this context). The issue in *Stabile* was that, by their conduct, the defendants were engaging in acts that could result in them prescriptively obtaining property rights and at the same time extinguishing the plaintiffs' property right in that regard. In these circumstances, the plaintiffs in *Stabile* had 15 years to file suit or they faced the loss of property rights. In this case, however, the township fails to explain what underlying property rights are at issue. Further, the township has not explained what "open, notorious,

-12-

continuous, and adverse use" it made of plaintiffs' property that would extinguish any of plaintiffs' property rights after 15 years. See *id.* To the contrary, as discussed, as recently as 2015, the township has recognized the continued validity of the 1975 Judgment, stating that it would allow a mobile-home development as required by the court's order. Accordingly, the township has failed to show that MCL 600.5801 applies as a time bar to plaintiffs' claim.

The township appears to recognize that it has not presented evidence to support that MCL 600.5809 or MCL 600.5801(4) bar the current action. Instead, the township provides a lengthy discussion of the policy rationales for statutes of limitations, and the township generally argues that *some* statute of limitations must bar plaintiffs' claim because 45 years is simply too long. However, the Legislature, not this Court, creates statutes of limitations, *Mair v Consumers Power Co*, 419 Mich 74, 85; 348 NW2d 256 (1984), and it is not the judiciary's role to create a new rule for the township simply because the township thinks it would be good policy. Moreover, it is ultimately the township's burden—as the party seeking to invoke a statute of limitations—to identify an applicable statute and to prove facts bringing this case within that statute. See *Kincaid*, 300 Mich App at 522. Having failed to establish that a statute of limitations barred plaintiffs' claim, the township was not entitled to summary disposition on this basis.

## 2. MODIFIABILITY OF INJUNCTIVE ORDERS

In the context of its statute-of-limitations argument, the township also contends that statutes of limitations should bar plaintiffs' claim because orders granting injunctive relief are always modifiable. However, we conclude that as a basis for dismissing a claim on statute-of-limitations grounds, the township's argument in this regard is without merit.

Arguably, the 1975 Judgment could be construed to grant injunctive relief to plaintiffs' predecessors. The 1975 Judgment declared the township's zoning of the property unconstitutional, and the trial court in 1975 concluded that the Doletsky plaintiffs should be allowed to use the property for a mobile-home park, and the township was effectively enjoined from interfering with that use. See *Schwartz v Flint*, 426 Mich 295, 329; 395 NW2d 678 (1986) ("After a zoning ordinance has been declared unconstitutional, in addition to that declaration, a judge may provide relief in the form of a declaration that the plaintiff's proposed use is reasonable, assuming the plaintiff's burden has been met, and an injunction preventing the defendant from interfering with that use."). And, as emphasized by the township, " '[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.' " *First Protestant Reformed Church of Grand Rapids v De Wolf*, 358 Mich 489, 495; 100 NW2d 254 (1960), quoting *United States v Swift & Co*, 286 US 106, 114; 52 S Ct 460; 76 L Ed 999 (1932). See also MCR 2.612(C)(1)(e) (allowing a court to grant relief from judgment when it is no longer equitable for the judgment to have prospective application).

Even assuming arguendo that the 1975 Judgment constitutes an injunction subject to modification, it does not necessarily follow that a statute of limitations bars plaintiffs' claim. The township's argument in this regard is confusing and devoid of legal analysis. If anything, the township's assertion that the 1975 order is *always* modifiable is a tacit acknowledgment that the judgment is still valid and enforceable, otherwise there would be no need for modification. Additionally, even if the order is theoretically modifiable, the township would not have authority to unilaterally abrogate the 1975 Judgment. See *Troy v Holcomb*, 362 Mich 163, 169; 106 NW2d

762 (1961). Instead, the proper procedure would be for the township to apply to the court for modification of the decree, which the township has not done. See *id*.; see also MCR 2.613(B) ("A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act."). It would also be the township's burden to show a change of circumstances warranting modification. See *Swift & Co*, 286 US at 119. Thus, contrary to the township's arguments, modification of injunctions has nothing to do with the statute of limitations. For all these reasons, the township's modification argument, as a basis for summary disposition, lacks merit. The trial court erred by granting summary disposition to the township on the basis of laches, and the township has not shown that plaintiffs' claim related to the 1975 Judgment is barred by a statute of limitations. Accordingly, we reverse the grant of summary disposition to the township, and we remand for further proceedings.

## D. RES JUDICATA, COLLATERAL ESTOPPEL, AND WAIVER

As noted, in addition to arguing that the trial court erred by granting summary disposition to the township, plaintiffs also argue that the trial court erred by denying plaintiffs' motion for summary disposition on the basis of res judicata, collateral estoppel, and waiver. However, plaintiffs have failed to include these issues in their statement of the questions presented on appeal as required by MCR 7.212(C)(5). These issues have not been properly presented for appellate review, and we decline to consider these issues at this time. See *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). We note that the trial court did not rule on these issues, and plaintiffs should be allowed to raise these issues again on remand.

## III. SUMMARY DISPOSITION RELATED TO PLAINTIFFS' COUNT II

Plaintiffs also argue that the trial court erred by dismissing their facial challenge to the 2020 zoning amendments on the basis that the claim was not ripe for judicial review. We concur that the trial court erred and we also reject the township's assertion that plaintiffs lacked standing to pursue this claim. However, we decline to address the merits of plaintiffs' claim at this time, and instead leave it to the trial court to address this issue on remand.

## A. STANDARDS OF REVIEW

Whether a plaintiff must exhaust administrative remedies before seeking judicial review implicates questions of subject-matter jurisdiction. See *Bruley v Birmingham*, 259 Mich App 619, 623; 675 NW2d 910 (2003). Whether a trial court has subject-matter jurisdiction presents a question of law that this Court reviews de novo. *Id.* More generally, questions involving ripeness are reviewed de novo. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017). Whether a party has standing presents a question of law, which this Court reviews de novo. *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008).

## B. ANALYSIS

Generally, a litigant has standing "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). In the

zoning context, a property owner, whose property is adversely affected by a zoning ordinance can be seen to have a special right or interest that will confer standing to challenge the facial validity of the ordinance. See *Randall v Twp Bd of Meridian Twp, Ingham Co*, 342 Mich 605, 607-608; 70 NW2d 728 (1955). See also 101A CJS, Zoning and Land Planning, § 26 ("[T]hose whose rights are or may be injuriously affected by the application or enforcement of a zoning regulation may attack its validity. Thus, the validity of an ordinance may be attacked by the owner of property affected . . . ."). However, property ownership is not necessarily required to confer standing to challenge a zoning ordinance. See generally *Sun Oil Co v Ferndale*, 6 Mich App 470, 472-473; 149 NW2d 485 (1967). For example, depending on the facts, a party who has contracted to purchase property may also have standing to challenge the constitutionality of a zoning ordinance. See *id*. (rejecting standing challenge when the plaintiff had a contractual relationship with the owner of the property and submitted a permit application for a gas station).

"The doctrine of ripeness is closely related to the standing doctrine in that it focuses on the timing of the action." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 553; 904 NW2d 192 (2017) (quotation marks and citation omitted). "The ripeness doctrine requires that a party has sustained an actual injury to bring a claim. A party may not premise an action on a hypothetical controversy." *Id*. (citations omitted).

> In land use challenges, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action. It rests upon the idea that courts should not decide the impact of regulation until the full extent of the regulation has been finally fixed and the harm caused by it is measurable. [*Bruley*, 259 Mich App at 623 (quotation marks and citation omitted).]

Whether framed as a deprivation of due process or equal protection, or as takings claim, an "as applied" challenge to a zoning ordinance requires finality and an exhaustion of administrative remedies. *Paragon Props Co v Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996); *Bruley*, 259 Mich App at 626-628.

> [T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. [*Bruley*, 259 Mich App at 628 (quotation marks and citation omitted).]

Although an as-applied challenge requires finality and exhaustion of administrative remedies, a facial challenge may be brought in circuit court without first exhausting administrative remedies. *Id*. at 626-628. "Finality is not required for facial challenges because such challenges attack the very existence or enactment of an ordinance." *Paragon Props Co*, 452 Mich at 577. Further, when the issue involved is a constitutional challenge to the validity of the ordinance, exhaustion of the various administrative remedies can be considered "futile because [t]here is no sense in forcing a plaintiff to plod through the lengthy administrative process when only the courts have the authority to resolve the controlling constitutional issue." *Bruley*, 259 Mich App at 627 (quotation marks and citation omitted; alteration in *Bruley*). The difference between as-applied and facial challenges has been explained by our Supreme Court as follows:

A facial challenge alleges that the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market. An "as applied" challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution. [*Paragon Props Co*, 452 Mich at 576 (citations omitted).]

Turning to the relevant claim in this case, in Count II of their complaint, plaintiffs alleged a facial challenge to the validity of the 2020 ordinance amendment. Briefly summarized, plaintiffs contend that the 2020 ordinance amendment—requiring final site-plan approval from the township—unconstitutionally conflicts with the requirements and procedures for approval of a mobile-home development as set forth in the MHCA. Relevant to plaintiffs' claim, "local governments may control and regulate matters of local concern when such power is conferred by the state." *DeRuiter v Byron Twp*, 505 Mich 130, 140; 949 NW2d 91 (2020). "State law, however, may preempt a local regulation either expressly or by implication. Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly conflicts with state law (conflict preemption)." *Id.* (citations omitted). It would be unconstitutional for a township to attempt to regulate an issue preempted by state law. See *Walsh v River Rouge*, 385 Mich 623, 639; 189 NW2d 318 (1971).

Here, plaintiffs' claim that the township's ordinance is invalid because it conflicts with the MHCA is a constitutional attack to the facial validity of the township's ordinances. See, e.g., *Jott, Inc v Clinton Charter Twp*, 224 Mich App 513, 544; 569 NW2d 841 (1997) (rejecting ripeness objections and considering constitutional challenges to disputed ordinance, including preemption). Plaintiffs—as the owner (J.A. Bloch) and proposed developer and purchaser of the property (Sun ACQ)[10]—have standing to litigate this question impacting the property and, more specifically, the proposed development. Moreover, because the claim involves a facial challenge, plaintiffs' failure to pursue additional administrative remedies does not prevent plaintiffs from seeking judicial review of the constitutional, facial challenge. See *Bruley*, 259 Mich App at 626-628. The trial court erred by concluding that the claim was not ripe. See *id.*

On appeal, as in the trial court, the township contends that plaintiffs are impermissibly seeking an "advisory opinion." Relying on caselaw involving the Michigan Supreme Court's authority to issue advisory opinions under Const 1963, art 3, § 8, the township contends that an advisory opinion is not warranted on the facts of this case because neither the Legislature nor the governor have requested such an opinion. The township's reliance on this body of law is wholly misplaced. Const 1963, art 3, § 8, states: "Either house of the legislature or the governor may

---

[10] J.A. Bloch presented evidence to support that it owns the property. Plaintiffs also alleged in their complaint that, in July 2018, J.A. Bloch entered into an agreement to sell the property to Sun ACQ, an affiliate of Sun Communities, which operates numerous mobile-home parks in Michigan. There is also evidence that Sun ACQ submitted a preliminary site plan to the township related to the property. However, the purchase contract between J.A. Bloch and Sun ACQ does not appear in the lower court record, and accordingly the township questions Sun ACQ's involvement in this case. However, even if the failure to present the sale contract supported that Sun ACQ lacked standing, J.A. Bloch—as the property owner—would still have standing in this case.

request the opinion of *the supreme court* on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date." (Emphasis added). And Justice MARKMAN's opinion on which the township relies—from *Woodman ex rel Woodman v Kera LLC*, 486 Mich 228; 785 NW2d 1 (2010)—involved the Supreme Court's authority to issue an advisory opinion. These principles regarding advisory opinions by the Supreme Court simply have no applicability in this case. At best, in relying on *Woodman* and Const 1963, art 3, § 8, the township seems to be suggesting that there is no actual controversy and that the trial court should not address a hypothetical issue. However, for the reasons already discussed, there is an actual controversy regarding the validity of the 2020 ordinance that is ripe for judicial review, and plaintiffs have standing to litigate that question. Accordingly, the township's "advisory opinion" argument lacks merit.

Relatedly, as part of its assertion that there is no controversy for a court to decide, the township asserts that the MHCA does not actually apply to plaintiffs' property because there is a difference between "manufactured housing" and a "mobile home," and according to the township, plaintiffs plan to build a manufactured-housing development rather than a mobile-home park. This assertion lacks merit. Relevant to the township's argument, under the MHCA:

> "Mobile home" means a structure that is transportable in 1 or more sections, built on a chassis, and designed to be used as a dwelling, with or without a permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained in the structure. [MCL 125.2302(h).]

For purposes of the MHCA, this Court has recognized that the terms "manufactured house" and "mobile home" appear to be synonymous. *Mortgage Elec Registration Sys, Inc v Pickrell*, 271 Mich App 119, 121 n 3; 721 NW2d 276 (2006).[11] Moreover, even if there were an argument to be made that there is—or can be—a difference between manufactured homes and mobile homes, the township presented insufficient factual support for its contention that plaintiffs' proposed development will contain housing that does not satisfy the MHCA's definition of "mobile homes." The township has not shown that the MHCA does not apply to this dispute.

With regard to plaintiffs' Count II, we note that, on appeal, plaintiffs ask this Court to go further than addressing the threshold ripeness and standing issues to actually rule on the constitutionality of the township's 2020 amendments. In our view, this issue has not yet been addressed by the trial court, and although the question is one of law that we could potentially decide in the first instance, there also exists a "general presumption" that this Court "will not reach

---

[11] See also *Bennett v CMH Homes, Inc*, 770 F3d 511, 517-518 (CA 6, 2014) (Stranch, J., dissenting) ("Until the late 1970's, manufactured homes were generally called 'mobile homes.' . . . In response to a negative stigma against 'mobile homes,' the industry responded by coining the term 'manufactured home' that—though naming the same product—was intended to impart a better impression."); *Thiel v Goyings*, 504 Mich 484, 503 n 5; 939 NW2d 152 (2019) (distinguishing "mobile and manufactured home" from "modular homes" for purposes of a restrictive covenant and explaining that "[m]obile and manufactured homes are built on an automotive-type frame that incorporates an axle or metal chassis").

constitutional issues that are not necessary to resolve a case." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). At this point, there is still much to be addressed on remand, particularly with regard to the 1975 Judgment, and the case would not be resolved by addressing the constitutionality of the 2020 amendments. In these circumstances, we decline to address this issue at this time. See *id*. Instead, we leave the issue to be addressed on remand.

## IV. INTERVENTION

Lastly, plaintiffs argue that the trial court abused its discretion by allowing intervenors to intervene. We review a trial court's decision on a motion to intervene for an abuse of discretion. *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Id*. (quotation marks and citations omitted). We conclude that the trial court did not abuse its discretion by granting intervenors' motion to intervene in this case.

"Intervention is an action where a third party becomes a party in a suit that is pending between others." *Hill v LF Transp, Inc*, 277 Mich App 500, 508; 746 NW2d 118 (2008). Intervenors moved to intervene as of right under MCR 2.209(A)(3) or permissively under MCR 2.209(B). These provisions state:

> (A) Intervention of Right. On timely application a person has a right to intervene in an action:
>
> * * *
>
> (3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> (B) Permissive Intervention. On timely application a person may intervene in an action
>
> * * *
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. [MCR 2.209.]

"The rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented." *Hill*, 277 Mich App at 508 (quotation marks and citation omitted). Intervention may be denied, however, when "it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Id*.

-18-

(quotation marks and citation omitted). Although the court rule requires a proposed intervenor to claim an interest in the property, it is not necessary that a party seeking intervention prove a "meritorious claim" at the intervention stage. *Id.* at 508-509. Further, although intervention requires a possibility of inadequate representation, "the concern of inadequate representation of interests need only exist; inadequacy of representation need not be definitely established." *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 762; 630 NW2d 646 (2001).

Here, whether the trial court granted intervention as of right or permissively is not entirely clear from the record, but the trial court's reasoning seems to support that the trial court concluded that intervenors were entitled to intervene as right under MCR 2.209(A)(3). Specifically, following a hearing and oral argument from the parties, the trial court granted intervenors' motion to intervene, reasoning:

> All right. I am persuaded that the proposed Intervenors do have an interest in the outcome of this matter and also that their interest is while it might be aligned with that of the Township, it is different from that of the Township and greater or more specific or particular to the Village than either the Township's general interest in enforcing its zoning regulations. And I will therefore grant the motion to intervene.

> I agree with the Intervenor that the arguments made against intervention primarily go to the merits of the case rather than to whether or not the Village of Barton Hills has an adequate interest justifying intervention in the case and there will be a time and place for those arguments to be heard, but it's not on the motion to intervene.

The intervenors' interest related to the property more specifically involved an aquifer under plaintiffs' property from which intervenors draw their municipal water supply, an interest which could be affected by a mobile-home development. Contrary to plaintiffs' arguments on appeal, the trial court did not abuse its discretion by concluding that intervenors claimed "an interest relating to the property" at issue in this case. Cf. *Vestevich*, 245 Mich App at 762 (concluding that nearby landowners had an interest sufficient to support intervention in a land-use dispute when they were concerned that "their interests would be affected by the commercial development of the residentially zoned parcel, by way of neighborhood character, property values, traffic patterns, and the like"). Whether intervenors' claim to an interest related to the property has any merit is not the issue; it is enough that they are able to claim an interest related to the property. See *Hill*, 277 Mich App at 508. Further, although the township and proposed intervenors are aligned in opposition to a mobile-home development, there is a possibility that the township, which is mainly concerned with its overall zoning plan and which has not expressed any particular concern for the neighboring community's water supply, will not adequately represent intervenors' interests. See *D'Agostini v Roseville*, 396 Mich 185, 189; 240 NW2d 252 (1976). Consequently, the trial court did not abuse its discretion by granting intervenors' motion to intervene. See MCR 2.209(A)(3).

In sum, we reverse the grant of summary disposition to the township, affirm the trial court's decision to allow intervention, and remand for further proceedings consistent with this opinion.

We do not retain jurisdiction.  No costs are awarded.  MCL 7.219(A).

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates